1

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF GEORGIA
 2                       SAVANNAH DIVISION


 3
    UNITED STATES OF AMERICA,    )
 4                               )
           Plaintiff,            )
 5                               )
       vs.                       )
 6                               )
    RASHAMEL BROWN,              )    CASE NO. 4:20-CR-124-5
 7  CHARLES COLLINS,             )    CASE NO. 4:20-CR-124-8
    CRAIG SCOTT,                 )    CASE NO. 4:20-CR-124-9
 8  TEMPERANCE FENNELL,          )    CASE NO. 4:20-CR-124-16
    JOSEPH PARRISH,              )    CASE NO. 4:20-CR-124-17
 9  DAVID FUENTES,              )    CASE NO. 4:20-CR-124-18
    JAVONTAE PARRISH,            )    CASE NO. 4:20-CR-124-19
10  MORISSA POLLARD,             )    CASE NO. 4:20-CR-124-28
    MICHAEL SIMMONS,             )    CASE NO. 4:20-CR-124-29
11                               )
           Defendants.           )
12  ----------------------------

13

14

15

16     TRANSCRIPT OF INITIAL APPEARANCE & ARRAIGNMENT HEARING
           BEFORE THE HONORABLE CHRISTOPHER L. RAY
17                  United States Courthouse
                       125 Bull Street
18                      Savannah, GA
                    December 14, 2020
19

20

21  COURT REPORTER:   Kelly A. McKee, CCR, RMR, CCP, RDR
                       United States Court Reporter
22                     P. O. Box 8552
                       Savannah, GA  31412
23                     912-650-4065

24     (Proceedings recorded via electronic recording, transcript
    subsequently produced by mechanical stenography and
25  computer-aided transcription.)
```

2

```
 1                    APPEARANCES OF COUNSEL

 2    FOR THE UNITED STATES OF AMERICA:

 3        Frank Morgan Pennington, II, Esq.
          Noah Abrams, Esq.
 4        U. S. ATTORNEY'S OFFICE
          P. O. Box 8970
 5        22 Barnard Street, Suite 300
          Savannah, GA  31412
 6        912-652-4422
          Email:  frank.pennington@usdoj.gov
 7

 8    FOR THE DEFENDANT BROWN:

 9        Steven Woodward, Esq.
          7 East Congress Street, Suite 720
10        Savannah, GA 31401
          720-208-6055
11        Email: Steven@woodwardcriminaldefense.com

12    FOR THE DEFENDANT COLLINS:

13        Daniel James O'Connor, Esq.
          Bryant O'Connor LLP
14        502 Jackson Street
          P.O. Box 28
15        Vidalia, GA 30475-0028
          912-537-9021
16        Fax: 912-537-3807
          Email: Djo@bryantoconnor.com
17

18    FOR THE DEFENDANT SCOTT:

19        Brian Joseph Huffman, Jr., Esq.
          The Huffman Law Firm
20        1211 Bull Street
          Savannah, GA 31401
21        912-344-5241
          Email:  joe@huffmanlaw.org
22    FOR THE DEFENDANT FENNELL:

23        Ryan D. Langlois, Esq.
          217 West York Street
24        Savannah, GA 31401
          912-349-7429
25        Fax: 912-349-2258
          Email: RdlangloisEsq@gmail.com
```

3

1                      APPEARANCES OF COUNSEL, (cont'd)

2    FOR THE DEFENDANT JOSEPH PARRISH:

3        **Thomas A. Withers, Esq.**
         Gillen Withers & Lake, LLC
4        P.O. Box 10164
         Savannah, GA 31412
5        912-447-8400
         Fax: 912-629-6347
6        Email: Twithers@gwllawfirm.com

7    FOR THE DEFENDANT FUENTES:

8        **Elizabeth Carlisle Beasley, Esq.**
         3500 Fort McAllister Road
9        Richmond Hill, GA 31324
         912-226-6664
10       Email: Carlislelegalservices@gmail.com

11   FOR THE DEFENDANT JAVONTAE PARRISH:

12       **Derek A.T. Kauhane, Esq.**
         PO Box 8433
13       Savannah, GA 31412
         912-661-0550
14       Email: Dkauhane16@gmail.com

15   FOR THE DEFENDANT POLLARD:

16       **Ronald J. Poirier, Esq.**
         Ron Poirier, Attorney at Law
17       100 Bull Street
         Suite 200
18       Savannah, GA 31401
         912-660-3857/912-721-8750
19       Fax: 912-721-8601
         Email: Rjp_law@aol.com
20
     FOR THE DEFENDANT SIMMONS:
21
         **Arvo Howard Henifin, Esq.**
22       The Henifin Law Firm
         P.O. Box 61302
23       Savannah, GA 31420
         912-358-8064
24       Email: Arvo.henifin@henifinlaw.com

25

4

**P R O C E E D I N G S**

**(1:38 p.m.)**

1

2

3      THE COURT:  Ms. Davenport, if you would, please call the

4  case.

5      THE CLERK:  4:20-CR-124, United States of America versus

6  the following defendants:  Number 5, Rashamel Brown; Number 8,

7  Charles Collins; Number 9, Craig Scott; Number 16, Temperance

8  Fennell; Number 17, Joseph Parrish; Number 18, David Fuentes;

9  Number 19, Javontae Parrish; Number 28, Morissa Pollard; and

10  Number 29, Michael Simmons.

11      MR. PENNINGTON:  Frank Pennington, Your Honor, for the

12  government, along with Noah Abrams.

13      MR. ABRAMS:  Good morning, Your Honor.

14      THE COURT:  All right.

15      MR. PENNINGTON:  We are ready to proceed.

16      THE COURT:  All right.  Thank you, Counsel.

17      I'd ask each of the named defendants to please stand.

18  Ladies and Gentlemen, good afternoon.  I'm Judge Ray.  This is

19  the United States District Court for the Southern District of

20  Georgia.  Let me advise each of you that you're here today

21  because you've been charged with a violation of federal law by

22  means of indictment by the grand jury.

23      We are not here today to determine whether these charges

24  against you are true or if they are false.  Under our system of

25  justice, you are presumed to be innocent of these charges.

5

1   Copies of the indictment against you have been made available to

2   each of you through your counsel.

3       We are here today for purposes of your initial

4   appearance and arraignment before the Court.  The purpose of

5   this hearing is for me to advise you as to the charges against

6   you, to review your constitutional and legal rights, to

7   determine how you may wish to plead to the charges at this time,

8   to consider whether you may be released or detained pending any

9   trial of the case, and also to set any other further deadlines

10   as may be necessary.

11       As our hearing progresses today, I may speak to some or

12   all of you individually about your cases, but for right now I

13   have some common instructions that apply to everyone, and so I

14   would ask that each of you please listen very carefully to what

15   I have to say this afternoon.

16       Each of you has the absolute constitutional right to

17   remain silent.  That is to say that no one associated with the

18   government, nor any law enforcement officer can force or compel

19   you to make any statements or to answer any questions about any

20   subject, but perhaps most importantly about the charges against

21   you in your case.

22       Any statements that are made by you or any answers that

23   you give to any questions asked can be used against you as

24   evidence in court.  That could be in this hearing here today, or

25   it could be in future hearings as well.  Therefore, I will

6

1    advise you that it is likely in your best interest not to make

2    any statements nor to answer any questions, unless and until an

3    attorney, who's representing your legal interests only, advises

4    you that it's in your best interest to do so.

5         Speaking of attorneys, each of you has the right to be

6    represented by a lawyer at every critical stage of this case.

7    That means both in and out of court.  It means here at today's

8    hearing.  It means at any future hearings as well.  You're

9    entitled to be assisted by counsel before being interviewed by

10   law enforcement or before making any statements.

11        If you would like to hire a lawyer of your own choosing,

12   that is certainly your right, and you can do that, but if you

13   are financially unable to afford an attorney and you would like

14   to have the Court appoint a lawyer for you, the Court can do

15   that at no cost to you.

16        Now, in this particular case today, I have received

17   financial affidavits from Defendants Rashamel Brown, Charles

18   Collins, Craig Scott, Temperance Fennell, David Fuentes,

19   Javontae Parrish, Morissa Pollard and Michael Simmons.  Having

20   had an opportunity to review each of those financial affidavits,

21   I find that each of these defendants does qualify for a

22   court-appointed lawyer in this case; and thus, the Court has

23   made the following appointments:

24        The Court has appointed Mr. Steven Woodward to represent

25   Defendant Brown.  Is that correct, Mr. Woodward?

7

1          MR. WOODWARD:  Yes, Your Honor.

2          THE COURT:  The Court has appointed Mr. Dan O'Connor to

3    represent Defendant Collins.  Is that correct, Mr. O'Connor?

4          MR. O'CONNOR:  Yes, Your Honor.

5          THE COURT:  The Court has appointed Mr. Joe Huffman to

6    represent Defendant Scott.  Is that correct, Mr. Huffman?

7          MR. HUFFMAN:  Yes, Your Honor.

8          THE COURT:  The Court has appointed Ryan Langlois to

9    represent Temperance Fennell.  Is that correct, Mr. Langlois?

10         MR. LANGLOIS:  Yes, Your Honor.

11         THE COURT:  The Court has appointed Ms. Carlisle Beasley

12   to represent Mr. Fuentes.  Is that correct, Ms. Beasley?

13         MS. BEASLEY:  Yes, Your Honor.

14         THE COURT:  The Court has appointed Mr. Derek Kauhane to

15   represent Mr. Javontae Parrish.  Is that right, Mr. Kauhane?

16         MR. KAUHANE:  Yes, Your Honor.

17         THE COURT:  The Court has appointed Mr. Ronald Poirier

18   to represent Ms. Pollard.  Is that correct, Mr. Poirier?

19         MR. POIRIER:  Yes, Your Honor.

20         THE COURT:  And the Court has appointed Mr. Arvo Henifin

21   to represent Michael Simmons.  Is that correct, Mr. Henifin?

22         MR. HENIFIN:  Yes, Your Honor.

23         THE COURT:  Additionally, on behalf of Defendant Joseph

24   Parrish, I understand Mr. Withers has made a conditional notice

25   of appearance.  Is that correct, Mr. Withers?

8

1    MR. WITHERS:  That's correct, Your Honor.  And I would

2  ask the Court for three weeks to finalize arrangements with

3  Mr. Parrish, which would be Monday, January 4th, I believe.

4    THE COURT:  That is fine, Mr. Withers, but obviously we

5  will need some firm report from you by that date one way or the

6  other.

7    MR. WITHERS:  Yes, Your Honor.

8    THE COURT:  The record will reflect, then, that each of

9  the counsel whom I have identified by name here today have

10  entered their notice of appearance on behalf of their respective

11  clients, are present with them, have been present with them and

12  will remain present with them through the completion of this

13  initial appearance and arraignment.

14    To each of the defendants who's here today, since this

15  is your first appearance in court on these particular charges,

16  you are also entitled to consideration for bail or release

17  pending trial.  Depending upon the facts of the case, the weight

18  of the government's evidence, your history, your background,

19  your ties to the community, any criminal history, should you

20  have any, and other factors which I am required to consider by

21  law, the Court may either direct that you be released on bond

22  pending the trial of this case or direct that you remain in

23  custody.

24    We will address the question of bond versus detention

25  with regard to each of you individually a little later in this

9

1   hearing this afternoon.

2          I believe that each of you is a citizen of the United

3   States, but if any of you are not American citizens, you need to

4   tell your lawyers that at this hearing this afternoon, and they

5   will need to bring that to my attention, as there are other

6   matters that I would need to review with any of you if you are

7   not citizens of the United States.

8          Counsel, is there any defendant present here today who

9   would not waive formal verbatim reading of the indictment in

10  favor of me simply summarizing the particular counts that are

11  applicable to these defendants?

12         Hearing no objection, then, each of the defendants will

13  waive formal reading of the indictment, and I will review each

14  of the key charges that's applicable to each of the defendants

15  present here today.

16         From my review of the indictment, it appears that this

17  is a 27-count indictment, which involves some 29 defendants.

18  However, of the defendants who are present here today, only the

19  following counts are involved:

20         One, two, three, 13, 15, 18, 19, 22, 23, 26 and 27.  And

21  so I will summarize those particular counts.

22         In Count 1 of this indictment, the grand jury charges

23  the offense of conspiracy to possess with intent to distribute

24  and to distribute controlled substances:  Cocaine, cocaine base

25  and marihuana, in violation of Title 21 United States Code

1   Section 846.  Beginning on a date at least as early as 2016, up

2   to and including the return date of this indictment, Defendants

3   Brown, Collins, Scott, Fennell, Parrish, Fuentes and Parrish,

4   and Pollard and Simmons, aided and abetted by each other and by

5   others, did knowingly conspire together to possess with intent

6   to distribute and to distribute 5 kilograms or more of a mixture

7   or substance containing a detectable amount of cocaine and 28

8   grams or more of a mixture or substance containing a detectable

9   amount of crack, both Schedule II controlled substances; and

10  marihuana, a Schedule I controlled substance.

11          In Count 2 of the indictment, which applies to

12  Defendants Brown and Scott, the grand jury charges the offense

13  of conspiracy to use, carry or possess firearms in violation of

14  Title 18 United States Code Section 924(o).  More specifically,

15  it's alleged that beginning on a date at least as early as

16  December of 2019, up to and including the return date of this

17  indictment, that these named defendants and other named

18  defendants, aided and abetted by each other, did conspire

19  together to commit an offense against the United States, that

20  is, knowingly and unlawfully possessing, using and brandishing

21  and carrying firearms in furtherance of a drug trafficking

22  crime; more specifically, the offense charged in Count 1 of the

23  indictment.

24          In Count 3 of the indictment, which applies to Defendant

25  Charles Collins, the grand jury charges the offense of

1  distribution of a controlled substance, cocaine, in violation of

2  Title 21 United States Code Section 841(a)(1).  On or about

3  November 25, 2019, Defendant Collins did knowingly and

4  intentionally possess with intent to distribute and to

5  distribute a mixture or substance containing a detectable amount

6  of cocaine.

7         Moving over to Count 13 of the indictment, which applies

8  to Defendant Pollard and others, the grand jury charges the

9  offense of maintaining drug-involved premises, in violation of

10  Title 21 United States Code Section 856(a)(1).  More

11  specifically, it's alleged that beginning on a date at least as

12  early as February of 2020, up to and including April 3 of 2020,

13  Defendant Pollard and the other named defendants, aided and

14  abetted by each other, did knowingly lease, rent, otherwise use

15  a place at 12300 Apache Street, Apartment 605, for the purpose

16  of distributing cocaine and marihuana.

17         Moving over to Count 15 of the indictment, which applies

18  to Defendant Javontae Parrish and Defendant David Fuentes and

19  others, the grand jury charges the offense of possession with

20  intent to distribute controlled substances, marihuana, in

21  violation of Title 21 United States Code Section 841(a)(1).  On

22  or about June 13th of 2020, the named defendants, aided and

23  abetted by each other and others, did knowingly and

24  intentionally possess with intent to distribute 50 kilograms or

25  more of a mixture or substance containing a detectable amount of

12

1   marihuana.

2          Moving over to Count 18 of the indictment, which applies

3   to Defendant Joseph Parrish, the grand jury charges the offense

4   of possession with intent to distribute controlled substance,

5   marihuana, in violation of Title 21 United States Code Section

6   841(a)(1).  On or about July 22nd of 2020, it's alleged that

7   Defendant Parrish did knowingly and intentionally possess with

8   intent to distribute a mixture or substance containing a

9   detectable amount of marihuana.

10          Moving over to Count 19 of the indictment, which also

11  applies to Defendant Joseph Parrish, the grand jury charges the

12  offense of possession of a firearm in furtherance of a drug

13  trafficking crime, in violation of Title 18 United States Code

14  Section 924(c).  On or about July 22nd of 2020, it's alleged

15  that Defendant Parrish did knowingly possess a firearm in

16  furtherance of at least one drug trafficking crime, to wit:  The

17  offense charged in Count 1, and also the offense charged in

18  Count 18 of this indictment.

19          Moving over to Count 22 of the indictment, which applies

20  to Defendant Joseph Parrish and others, the grand jury charges

21  the offense of maintaining a drug-involved premises, in

22  violation of Title 18 United States Code Section 856(a)(1).

23  It's alleged beginning on a date at least as early as May of

24  2020, up to and including July 22nd of 2020, that Defendant

25  Parrish, aided and abetted by others, did knowingly lease, rent,

13

1   use and maintain a place located at 506 Barberry Street,

2   Savannah, Georgia, for purposes of distributing cocaine and

3   marihuana.

4          Count 23 of the indictment, which applies to Defendant

5   Joseph Parrish and others, charges the offense of maintaining

6   drug-involved premises, in violation of Title 21 United States

7   Code Section 856(a)(1).  More specifically, it's alleged

8   beginning on a date at least as early as January of 2020, up to

9   and including July 22 of 2020, that Defendant Parrish and

10  others, aided and abetted by one another, did knowingly lease,

11  rent, use and maintain a place at 12300 Apache Avenue, Apartment

12  1717, Savannah, Georgia, for purposes of distributing cocaine

13  and marihuana.

14         Moving over to Count 26 of the indictment, which applies

15  to Defendant Temperance Fennell, the grand jury charges the

16  offense of maintaining a drug-involved premises, in violation of

17  Title 21 United States Code Section 856(a)(1).  Beginning on a

18  date at least as early as March of 2020 until September 11th,

19  2020, Defendant Fennell and the other named defendants, aided

20  and abetted by each other, did knowingly lease, rent, use and

21  maintain a place located at 1021 East Bolton Street, Apartment

22  B, Savannah, Georgia, for purposes of distributing cocaine and

23  marihuana.

24         Finally, in Count 27 of the indictment, which applies to

25  Defendant Charles Collins, the grand jury charges the offense of

14

1    maintaining drug-involved premises, in violation of Title 21

2    United States Code Section 856(a)(1).  Beginning on a date at

3    least as early as November of 2018, up to and including the

4    return date of this indictment, Defendant Collins and others,

5    aided and abetted by each other, did knowingly lease, rent, use

6    and maintain a place located at 1223 East Bolton Street,

7    Savannah, Georgia, for the purpose of distributing cocaine.

8           In addition to each of those substantive counts of this

9    indictment, the indictment also contains a forfeiture allegation

10   in which the United States may seek the forfeiture of certain

11   property that is the subject of, related to or arising out of

12   the charged offenses.

13          Each of the counts with which each of the defendants has

14   been charged carries with it maximum potential penalties that

15   you could be facing if you were to be convicted, and I'm going

16   to ask Mr. Pennington with the U.S. Attorney's Office to set

17   those penalties out for you now.

18          MR. PENNINGTON:  Thank you, Your Honor.  The penalties

19   are as follows:

20          Applicable to all defendants under Count 1, conspiracy

21   to possess with intent to distribute and to distribute

22   controlled substances, 5 kilograms or more of cocaine; 28 grams

23   or more of cocaine base, or crack; and marihuana, the penalty is

24   not less than 10 years of imprisonment, nor more than life, not

25   more than a 10 million dollar fine, not less than five years of

15

1   supervised release, and a mandatory special assessment of $100.

2           As it relates to Counts 3 and 15, Your Honor, both

3   charge possession with intent to distribute and distribution of

4   controlled substances, those applying in Count 3 to Charles

5   Collins, and in Count 15 to defendants Fuentes -- excuse me,

6   David Fuentes and Javontae Parrish, as well as others, the

7   penalties are as follows:

8           Not more than 20 years of imprisonment, not more than a

9   one million dollar fine, not less than three years of supervised

10  release, and a $100 special assessment for each count.

11          As it relates, then, to Count Number 13, Your Honor --

12  let me back up, Your Honor.  Apparently I did skip Count 2.  I

13  apologize.  Skipped ahead on my notes.

14          As it relates to Count 2, Your Honor, which applies to

15  Defendants Brown and Scott, conspiracy to use, carry or possess

16  firearms, is not more than 20 years of imprisonment, not more

17  than a $250,000 fine, and not more than three years of

18  supervised release.

19          And then returning, then, Your Honor, to Count 13 as

20  well as Counts 22, 23, 26 and 27, those are maintaining

21  drug-involved premises counts, and they involve defendants

22  Morissa Pollard, Joseph Parrish, Temperance Fennell and Charles

23  Collins.  The penalties are not more than 20 years of

24  imprisonment, not more than a $500,000 fine, and not more than

25  three years of supervised release, along with the $100 mandatory

1   special assessment.

2          Turning, then, Your Honor, to Count 18, possession with

3   intent to distribute a quantity of marihuana, this applies to

4   Joseph Parrish.  It's not more than five years of imprisonment,

5   not more than a $250,000 fine, and at least two years of

6   supervised release, as well as the $100 mandatory special

7   assessment.

8          Turning, then, Your Honor, to Count 19, possession of a

9   firearm in furtherance of a drug trafficking crime, Your Honor,

10  this applies to Joseph Parrish.  It's not less than five years

11  of imprisonment, not more than life, not more than a $250,000

12  fine, not more than five years of supervised release, and this

13  sentence must be served consecutive to all other sentences.

14  And, Your Honor, of course, the $100 special assessment also

15  applies.  Thank you.

16          THE COURT:  All right.  Thank you, Mr. Pennington.

17          Ladies and Gentlemen, the only plea that I'm going to be

18  authorized to accept from any of you this afternoon in this

19  court would be a plea of not guilty to this indictment.

20          To that end, Mr. Woodward, how does your client,

21  Mr. Brown, plead?

22          MR. WOODWARD:  Not guilty, Your Honor.

23          THE COURT:  Mr. O'Connor, how does your client,

24  Mr. Collins, plead?

25          MR. O'CONNOR:  Not guilty, Your Honor.

17

1         THE COURT:  Mr. Huffman, how does your client,

2   Mr. Scott, plead?

3         MR. HUFFMAN:  Not guilty, Your Honor.

4         THE COURT:  Mr. Langlois, how does your client,

5   Ms. Fennell, plead?

6         MR. LANGLOIS:  Not guilty, Your Honor.

7         THE COURT:  Mr. Withers, how does your client,

8   Mr. Parrish, plead?

9         MR. WITHERS:  Not guilty, Your Honor.

10        THE COURT:  Ms. Beasley, how does your client,

11  Mr. Fuentes, plead?

12        MS. BEASLEY:  Not guilty, Your Honor.

13        THE COURT:  Mr. Kauhane, how does your client, Mr.

14  Parrish, plead?

15        MR. KAUHANE:  Not guilty, Your Honor.

16        THE COURT:  Mr. Poirier, how does your client,

17  Ms. Pollard, plead?

18        MR. POIRIER:  Not guilty, Your Honor.

19        THE COURT:  And, Mr. Henifin, how does your client,

20  Mr. Simmons, plead?

21        MR. HENIFIN:  Not guilty, Your Honor.

22        THE COURT:  Very well.  The record will reflect that

23  each of the defendants have entered their plea of not guilty to

24  this indictment.  They have waived formal verbatim reading of

25  the indictment and have been provided with a copy of the

18

1    indictment through counsel.

2          Let's turn our attention, then, if we could to the

3    government's disclosure obligations in this case.

4          Mr. Pennington, what does the government's discovery

5    consist of in this matter?

6          MR. PENNINGTON:  Thank you, Your Honor.  The discovery

7    in this matter is extremely voluminous, Your Honor.  We have

8    requested from defense counsel a one-terabyte hard drive upon

9    which to place the discovery.  It consists of reports from the

10   FBI, the DEA, CNT, the United States Postal Service, as well as

11   the Savannah Police Department.

12         This discovery consists, obviously, of numerous police

13   reports related to the investigation and surveillance that

14   occurred of the various members of this conspiracy.  It also

15   consists of various test results from the crime labs, as well as

16   records of both physical and electronic surveillance, including

17   T III authorizations, 11 T III authorizations on nine target

18   telephones.  So we do intend to provide that discovery once we

19   have received the one-terabyte hard drive.

20         I will note, Your Honor, that there is quite a large

21   amount of discovery in this case that we're going to turn over.

22   It's right at 300 gigabytes, which is why we're asking for the

23   one-terabyte hard drive.  There is, in addition to that, a bit

24   of discovery totaling approximately 8 terabytes that is

25   electronic surveillance record that was conducted over the

19

1    course of this investigation, which we are not immediately

2    turning over.  We did endeavor to identify relevant video clips

3    as well as still shots as part of that just so that we could

4    provide at least some illustration of what that discovery is to

5    defense counsel's part of the discovery process.  But I say that

6    just so that each counsel that's here knows that that is

7    available.  Should they want to inspect it or need to inspect

8    it, we can make it available through appointment with my office

9    or with the FBI office, to view any portion of that or for

10   copying portions that defense counsel might deem relevant for

11   their inquiry if they need to.

12          We do have, Your Honor, beyond the discovery that we are

13   able to provide at this time, some additional discovery that we

14   will have to turn over pursuant to our obligations under *Brady*

15   *vs. Maryland* and its progeny.  In just our general discovery

16   obligations in the case, we do have some additional reports that

17   are coming in.  We have some continued lab analysis through the

18   DEA lab that is continuing at this time.  We have body-worn

19   camera footage that we requested from Savannah Police

20   Department, which we've not yet received.  And we have some data

21   related to pen register trap and traces and other GPS data that

22   was actually housed digitally at a location in Atlanta.  And so

23   copying that is still going on and will be provided as soon as

24   it is available.

25          In addition to that information, Your Honor, there are a

1   number of cellphones, at least 10, which are still needing to be

2   analyzed and/or searched that were seized as part of the

3   investigation.  So we're still working to continue through that.

4        We do expect, with the exception of the cellphones, that

5   the vast majority of that information will be available within

6   the next 30 days.  As I said, that represents, in comparison to

7   the over 300 gigabytes, what we believe to be a small portion of

8   the owed discovery.

9        With regard to discovery, Your Honor, we have contacted

10  each of defense counsel present here today to discuss a

11  protective order.  We've come to an agreement with all but two

12  of the defendants with regard to that protective order, and so

13  obviously we'll be entering a consent order with at least --

14  with regard to at least those eight defendants shortly.  And if

15  we are unable to agree with the other two, then we may end up

16  filing a motion for a protective order just to protect the

17  discovery in this particular case given certain situations that

18  the government deems critical to the protection of the

19  information contained therein.

20       With regard to the length of time that might be

21  necessary to review this discovery, Your Honor, I know Your

22  Honor is well aware that you granted 120 days on Friday.  I

23  think that results in a due date of approximately April the 10th

24  of next year for motions.  I think that's appropriate in this

25  case.  I do want to let the Court know, as I did before, in

21

1    presence of this counsel as I did before, that we do intend to

2    file a motion to declare this case complex because of the

3    breadth of the discovery and because of the number of

4    co-defendants.  And our expectation is it may take a long period

5    of time for defense counsel to fully vet the discovery; and so

6    we, of course, don't object to whatever time defense counsel

7    deems necessary, but we do think as of right now that scheduling

8    order seems to be appropriate.

9           THE COURT:  All right.  Thank you, Mr. Pennington.

10          Defense counsel, to Mr. Pennington's point, I did

11   conduct the first initial appearance and arraignment for one of

12   the co-defendants in this case this past Friday.  At that time

13   counsel for that defendant requested, and I agreed, that the 10

14   days for motions was clearly inappropriate in a case of this

15   type.  I granted a period of 120 days from this past Friday.

16          In order to keep all of the defendants on the same

17   briefing schedule, that would put all of your clients on a

18   117-day briefing schedule from today.  I'm just going to ask to

19   make sure each counsel, in fact, wants this additional time for

20   their clients.

21          Mr. Woodward, do you want this additional time?

22          MR. WOODWARD:  Yes, Your Honor.

23          THE COURT:  Mr. O'Connor?

24          MR. O'CONNOR:  I do, Your Honor.

25          THE COURT:  Mr. Huffman?

1          MR. HUFFMAN:  Yes, Your Honor.

2          THE COURT:  Mr. Langlois?

3          MR. LANGLOIS:  Yes, Your Honor.

4          THE COURT:  Mr. Withers?

5          MR. WITHER:  Yes, Your Honor.

6          THE COURT:  Ms. Beasley?

7          MS. BEASLEY:  Yes, Your Honor.

8          THE COURT:  Mr. Kauhane?

9          MR. KAUHANE:  Yes, Your Honor.

10          THE COURT:  Mr. Poirier?

11          MR. POIRIER:  Yes, Your Honor.

12          THE COURT:  And Mr. Henifin?

13          MR. HENIFIN:  Yes, Your Honor.

14          THE COURT:  Very well.  The record will reflect that

15   each of the defendants has requested additional time in which to

16   submit pretrial motions.  I specifically find that the ends of

17   justice served in granting defendants this additional time to

18   review the complex discovery outweighs the best interest of both

19   the public and the defendant in a speedy trial.  Each defendant

20   shall have 117 days from today in which to submit any pretrial

21   motions.

22          The government had requested an extended period of

23   response based on the anticipated complexity of this case last

24   week.  Mr. Pennington, you make the same request here?

25          MR. PENNINGTON:  We do, Your Honor.

1          THE COURT:  All right.  I shall give the government 30

2     days in which to respond to any motions filed by the defense,

3     and I'm signing a scheduling order to that effect right now.

4          Additionally, I remind the government, consistent with

5     the newly enacted Federal Rule of Criminal Procedure 5(f)(1),

6     that the government is ordered to produce any and all

7     exculpatory information to these defendants pursuant to *Brady*

8     *vs. Maryland* and its progeny.  I further counsel the government

9     that failure to do so in a timely manner can subject it to

10    sanctions.  I will include that in my order as well.

11         MR. PENNINGTON:  Thank you, Your Honor.

12         THE COURT:  All right.  We are now going to move on to

13    the subject of release versus detention.  We'll do this

14    individually with each named defendant.

15         So let's have Mr. Brown and Mr. Woodward please remain

16    standing.  Everyone else may be seated.

17         All right.  Mr. Pennington, what is the government's

18    position with regard to detention in this particular case?

19         MR. PENNINGTON:  With regard to Mr. Brown, Your Honor,

20    the government does request detention, and we note that this is

21    a case for which the presumption should apply.

22         THE COURT:  Is the government prepared to proceed with

23    the detention hearing today or would it like additional time in

24    which to prepare for that?

25         MR. PENNINGTON:  We'd request the additional time, Your

24

1   Honor.

2           THE COURT:  All right.  Insofar as the government is

3   moving for detention, but Mr. Brown is, of course, entitled to a

4   hearing for a determination as to whether he will or will not

5   qualify for bond, I'm going to have to grant the government's

6   request for a continuance.  I'm going to set this down for a

7   hearing on the issue of detention versus bond on this Thursday,

8   the 17th of December, at 11:30 in the morning.

9           I will enter an order directing that Mr. Brown is going

10  to remain in custody until that time and then at that hearing

11  will make a final determination as to whether he will be

12  detained or released on bond pending trial.

13          Mr. Woodward and Mr. Brown, this concludes your hearing.

14  You may be seated.

15          MR. WOODWARD:  Thank you, Your Honor.

16          THE COURT:  All right.  Let's move on to the matter of

17  *United States vs. Charles Collins*.  Mr. Collins and

18  Mr. O'Connor, if you would please stand.

19          Mr. Pennington, what is the government's position with

20  regard to release versus detention in Mr. Collins's case?

21          MR. PENNINGTON:  Your Honor, this case with Mr. Collins,

22  the government agrees to release based upon the recommendation

23  of probation.

24          THE COURT:  All right.  Very well.  Insofar as the

25  government has not moved to detain this defendant and I have no

1   independent basis to believe he ought be detained, it would

2   appear that he is an appropriate candidate for release on bond

3   with conditions.

4        There is a report that was prepared in this case by the

5   pretrial services office, which recommends that Mr. Collins be

6   released on conditions, including a $25,000 bond to be secured

7   by a third-party signature.

8        Obviously this hearing has not yet afforded any of the

9   defendants a chance to have any would-be guarantors, sureties or

10  witnesses here with them.

11       To that end, Mr. O'Connor, would you like an opportunity

12  to have a chance to find a friend or family member who would be

13  willing to come forward and be a signator on a third-party bond

14  for your client?

15       MR. O'CONNOR:  I would, Your Honor.  I think he's

16  identified somebody that I need to call.  I think he's got -- I

17  need to call.

18       THE COURT:  In order for me to accomplish that, though,

19  I would have to set him down for this Thursday as well and put

20  him on a hearing calendar that would allow you, he and any

21  would-be surety that he can come forward with to come forward at

22  that time.  Is that agreeable?

23       MR. O'CONNOR:  It is, Your Honor.  I do have a hearing

24  with Judge Wood that morning in Brunswick.

25       THE COURT:  What time is your hearing?

26

1          MR. O'CONNOR:  I believe it's 10:30.

2          THE COURT:  All right.  I'll tell you what I'm going to

3    do.  I'm going to slot you a little later in the day.  If I

4    slotted you at -- if I slotted you at 3:15 that day, do you

5    think that would be adequate or is your hearing going to run

6    longer than that?

7          MR. O'CONNOR:  No, Your Honor.  It'll be a short

8    sentencing.

9          THE COURT:  All right.  So we're going to put

10   Mr. Collins down for a hearing on the issue of release on

11   conditions of bond this Thursday, the 17th of December, at 3:15

12   p.m.  That concludes your hearing, Mr. Collins and

13   Mr. O'Connor.  You may be seated.

14         MR. O'CONNOR:  Thank you, Your Honor.

15         THE DEFENDANT:  Thank you, Your Honor.

16         THE COURT:  Counsel, Ms. Davenport reminds me, these

17   hearings on detention and bond will be back in my courtroom

18   downstairs, not back up here.

19         All right.  Let's move on to the next matter, *United*

20   *States vs. Craig Scott*.

21         Mr. Huffman and Mr. Scott, if you'd please stand.

22         Mr. Pennington, what is the government's position with

23   regard to Mr. Scott?

24         MR. PENNINGTON:  Your Honor, the government is moving

25   for detention with regard to Mr. Scott, and we do note that the

1   presumption applies there.

2        THE COURT:  Would the government request additional time

3   in which to prepare for this hearing?

4        MR. PENNINGTON:  We do, Your Honor.

5        THE COURT:  All right.  So, Mr. Scott, the government is

6   seeking to have you detained in this case, but you are entitled

7   to a bond hearing before me.  I am required to grant the

8   government's request for a continuance, and so I'm going to set

9   Mr. Scott's hearing down for this Thursday, the 17th of

10  December, at 1 p.m., Mr. Huffman.

11       MR. HUFFMAN:  Yes, Your Honor.

12       THE COURT:  And we will hear evidence and argument at

13  that time to make a final decision.

14       Mr. Scott, I'm going to enter an order that keeps you in

15  custody until Thursday at least, and then as of Thursday I'll

16  make a final decision as to whether you remain in custody or

17  would qualify for bond.  This concludes your hearing, Mr. Scott

18  and Mr. Huffman.  You all may be seated.

19       MR. HUFFMAN:  Your Honor, may I present something to the

20  Court?

21       THE COURT:  You may, Mr. Huffman.  I think you have a

22  potential conflict issue that's a non issue, but you wanted to

23  put it on the record; is that right?

24       MR. HUFFMAN:  Yes, Your Honor.  Craig Scott is Number 9

25  on the returned indictment.  Previously, earlier this year I was

28

1  appointed to represent Number 3 on this indictment, Kashif

2  Collins.  That indictment at that time was sealed.  My

3  involvement in that case was a first appearance.  Subsequently,

4  almost immediately, I was replaced by hired counsel.

5        I haven't been able to speak with Mr. Collins since

6  representing him and have had no other contact.  But I spoke

7  with Mr. Scott today.  Not knowing any of the facts of that

8  particular case because it was a sealed indictment and no

9  discovery, my current client expresses that there's no way any

10  conflict would exist, and I don't think there is any, but I

11  wanted to let the Court know.

12        THE COURT:  I appreciate that, Mr. Huffman.  Two pieces

13  of advice, if I may.  One, should your opinion on that subject

14  at any point change, will you bring that to the attention of the

15  Court immediately; and, two, please make sure to consult the

16  conflict rules and the Georgia Rules of Professional Conduct and

17  make sure the way in which you resolve the conflict is

18  consistent with everything that's set forth within those rules.

19  Okay?

20        MR. HUFFMAN:  Yes, Your Honor.

21        THE COURT:  All right.  Thank you, Mr. Huffman.

22        All right.  Next up, *United States vs. Temperance*

23  *Fennell*.  Ms. Fennell and Mr. Langlois, if you all would please

24  stand.

25        Mr. Pennington, what is the government's position with

29

1  regard to release versus detention with regard to Ms. Fennell?

2        MR. PENNINGTON:  We agree with probation's

3  recommendation, Your Honor, for release on bond.

4        THE COURT:  All right.  Very well.  Let me take a look

5  at that report.

6        All right.  The report from the United States Probation

7  Office in this case recommends that Ms. Fennell be released on

8  conditions, including a $10,000 unsecured bond.  Being that the

9  bond is unsecured, I believe we can proceed with the bond

10  paperwork today.

11        So, Ms. Fennell, as I mentioned at the beginning, as an

12  individual who has been charged with a crime, you are presumed

13  to be innocent.  The fact that you have been charged with these

14  offenses is not proof that you committed these offenses.

15        Nevertheless, you are going to be subject to certain

16  restrictions on your liberty and your behavior when you are

17  released on bond.  I'm going to review these restrictions with

18  you now, and I am going to impress upon you, and I impress upon

19  any defendant who's present here today who may qualify for bond,

20  you must comply with every condition of your pretrial release

21  and bond to the letter.  Any violation, no matter how minor,

22  carries with it a very real risk that the government would ask

23  to have you brought back here, to have your bond revoked and for

24  you to be held in jail awaiting the trial of your case.  Do you

25  understand?

30

1      DEFENDANT FENNELL:  Yes, sir.

2      THE COURT:  All right.  So let me review with you the

3  conditions that will be applicable to you.  First, you are

4  subject to the standard conditions that apply to any pretrial

5  releasee in a federal criminal case.

6      Number one, you cannot commit any federal, state or

7  local crime while on release.

8      Number two, if applicable in this case, you may be

9  required to provide a DNA sample.

10      Number three, you cannot change your address or your

11  contact information without the prior approval of your

12  supervising officer.

13      And, number four, you must appear whenever you are

14  directed to appear in court for any future hearings.

15      Additionally, I'm going to impose the other conditions

16  that were recommended by the probation office in this case.  You

17  will be required to post an unsecured bond in the amount of

18  $10,000.  What an unsecured bond means, that you are not

19  required to post any cash at this time.  And if you fully

20  perform on pretrial release, if you show up when you're supposed

21  to show up and if you don't violate any terms, you'll never be

22  required to forfeit that money.  But if you violate, if you fail

23  to appear, in addition to any other penalty that you might face,

24  you would also be required to forfeit the amount of $10,000 as

25  bail to the United States Government.  Do you understand?

31

1          DEFENDANT FENNELL:  Yes, sir.

2          THE COURT:  Additionally, you'll be required to report

3  as directed to your supervising officer.  You will be required

4  to obtain or at least attempt to obtain and maintain employment.

5  You may not obtain any passport or other international travel

6  document.  Your travel will be restricted to the Southern

7  District of Georgia.

8          You are required to avoid all contact with any potential

9  witness, victim or co-defendant in this case.  You must refrain

10 from possessing a firearm, destructive device or other dangerous

11 weapon.

12         You must refrain from the excessive use of alcohol.  You

13 must refrain from any use or unlawful possession of any narcotic

14 drug or other controlled substance, unless it is a legitimate

15 medication that has been prescribed by a licensed healthcare

16 provider.

17         Additionally, you'll be required to submit to periodic

18 testing to determine whether you're using any illegal

19 substances.  That could be blood.  It could be urine.  It could

20 be other testing.  You may not do anything to try to tamper with

21 or obstruct the test.  If you try to do anything to beat the

22 test, that also is a violation.

23         You may be required to participate in a program of

24 inpatient or outpatient substance abuse therapy and counseling,

25 if directed by the supervising officer.

32

1       And, lastly, you will be required to report to your

2  supervising officer any encounter that you have with law

3  enforcement, no matter how minor it is.  I don't care if you get

4  a ticket for jaywalking; any contact that you have with law

5  enforcement in its official capacity, the next thing you should

6  do is call your supervising officer.  Do you understand?

7       DEFENDANT FENNELL:  Yes.

8       THE COURT:  Mr. Langlois, any objections to any of those

9  terms and conditions that I propose to impose?

10      MR. LANGLOIS:  No objection, Your Honor.

11      THE COURT:  Mr. Pennington, anything from the

12  government?

13      MR. PENNINGTON:  No, Your Honor.  Thank you.

14      THE COURT:  Either Officer McDaniel or Officer Miller,

15  does that accurately reflect the recommendation of the probation

16  office in this case?

17      USPO MILLER:  It does, Your Honor.

18      THE COURT:  All right.  Ms. Davenport will handle the

19  execution of the bond paperwork at the end of the docket today.

20  If you all would please be seated.

21      MR. LANGLOIS:  Thank you, Your Honor.

22      THE COURT:  All right.  Let's move on to *United States*

23  *vs. Joseph Parrish*.

24      Mr. Parrish and Mr. Withers, if you all would please

25  stand.

33

1      Mr. Pennington, what is the government's position with

2  regard to Mr. Parrish, please?

3      MR. PENNINGTON:  Your Honor, the government is

4  requesting detention on Mr. Joseph Parrish.  We note that the

5  presumption applies to this defendant; and, Your Honor, we do

6  request the additional time for the hearing.

7      THE COURT:  All right.  Very well.

8      Mr. Parrish, the government is asking me to detain you

9  pending the trial of your case.  You are entitled to a hearing

10  before me on the question of bond.  The government has requested

11  additional time in which to prepare for that hearing.  I am

12  required to grant that request and give them that time.

13      I would intend, Mr. Withers, to set this down for a

14  detention hearing on Thursday, the 17th of December, at 1:45

15  p.m.  I will enter an order directing that Mr. Parrish will

16  remain in custody at least until then, and then we'll make a

17  final determination that day as to whether he qualifies for bond

18  or will remain in custody pending trial.

19      MR. WITHERS:  Thank you, Your Honor.

20      THE COURT:  Mr. Parrish, Mr. Withers, that concludes

21  your hearing.  If you all will please be seated.

22      MR. WITHERS:  Thank you, Your Honor.

23      THE COURT:  All right.  Next is *United States vs. David*

24  *Fuentes*.

25      Mr. Fuentes and Ms. Beasley, if you all would please

34

1    stand.

2         Mr. Pennington, what is the government's position with

3    regard to release versus detention in this case?

4         MR. PENNINGTON:  Your Honor, the government agrees with

5    the recommendation of probation for release on a $25,000 bond

6    secured by a third party.

7         THE COURT:  All right.  So, Ms. Beasley, much like the

8    other defendant, Mr. O'Connor's client, Mr. Collins, you

9    obviously don't have any third-party nominees with you here

10   today.  Is that correct?

11        MS. BEASLEY:  That's correct, Your Honor.  Not here with

12   us today.

13        THE COURT:  Would you like this additional time to have

14   a chance to find an appropriate nominee who could come forward

15   as a guarantor if I move this for a hearing on Thursday?

16        MS. BEASLEY:  Yes, Your Honor.  We have -- I am aware of

17   a family member, and she's communicated to probation as well

18   that she's willing to be a third-party signature.

19        THE COURT:  Very well.  What I'm going to do, then, is

20   set this down for a hearing on Thursday for purposes of release

21   on conditions of bond.  I would ask that that guarantor be

22   present here at the hearing so that we can find out if she is an

23   appropriate person and have her execute the correct paperwork at

24   that time.

25        MS. BEASLEY:  Your Honor, I also have a hearing that

1    morning in Effingham County.  I believe, if possible to get an

2    afternoon date, that I could make it by the afternoon.

3         THE COURT:  If I slotted you in at 4 p.m. that day,

4    Ms. Beasley, would that be adequate?

5         MS. BEASLEY:  I think that would be safe.  Thank you,

6    Your Honor.

7         THE COURT:  All right.  Then I'm going to put down

8    Mr. Fuentes for a hearing on conditions of release of bond for

9    Thursday, the 17th of December, at 4 p.m.

10        MS. BEASLEY:  Thank you, Your Honor.

11        THE COURT:  Mr. Fuentes, Ms. Beasley, that concludes

12   your hearing at this time.  Please be seated.

13        All right.  Next is *United States vs. Javontae Parrish*.

14   Mr. Parrish and Mr. Kauhane, if you'd please stand.

15        Mr. Pennington, what is the government's position with

16   regard to release versus detention in Mr. Parrish's case?

17        MR. PENNINGTON:  For Mr. Javontae Parrish, Your Honor,

18   the government requests detention.  We note the presumption

19   applies, and we request the additional time.

20        THE COURT:  All right.  Very well.  Mr. Parrish, the

21   government is asking that you be detained pending any trial of

22   this case.  As I've said to the other defendants, you are

23   entitled to a hearing on the question of whether you would

24   qualify for bond or whether you should be detained.  The

25   government has requested additional time in which to prepare for

36

1  that hearing, and I'm required to grant them that additional

2  time.  I'm going to set this down for a hearing on the question

3  of bond versus detention for Thursday, the 17th of December, at

4  2:30 p.m., Mr. Kauhane.

5         MR. KAUHANE:  Yes, Your Honor.  Thank you.

6         THE COURT:  All right.  Mr. Parrish and Mr. Kauhane,

7  that concludes your hearing.  If you all would please be seated.

8         MR. KAUHANE:  Thank you, Your Honor.

9         THE COURT:  Next is the *United States vs. Morissa*

10 *Pollard*.  If Mr. Poirier and Ms. Pollard would please stand.

11        Mr. Pennington, what is the government's position with

12 regard to release versus detention in Ms. Pollard's case?

13        MR. PENNINGTON:  Your Honor, the government would agree

14 with probation's recommendation in the event the Court

15 determined to give bond on a $10,000 unsecured bond.  We'd just

16 note that probation did, I guess, make note that the defendant

17 has not spoken to them.  I'm not sure if the Court wants to take

18 care of that aspect of it or not.  But other than that, the

19 government would agree to release based on probation's

20 recommendation.

21        THE COURT:  All right.  Well, let me take a look at that

22 report.

23        Officer McDaniel, it remains the recommendation of the

24 pretrial services office, despite the defendant's lack of

25 consent to an interview, that she would still be an appropriate

37

1    candidate for release?  Is that correct?

2            USPO McDANIEL:  Yes, Your Honor, it is.

3            THE COURT:  All right.  Thank you, Officer McDaniel.

4            So, Ms. Pollard, insofar as the government does not seek

5    to detain you in this case, you would be an appropriate

6    candidate for release on conditions of bond, and that is what

7    I'm going to do here today.  I'm sure you heard the lecture that

8    I gave to Ms. Pollard -- I'm so sorry.  That I gave to

9    Ms. Fennell, who's seated not far from you.  But I'm going to

10   review the exact same information with you because it is that

11   important.

12           You are presumed to be innocent of the charges against

13   you in this case, but nonetheless, when and if you're allowed to

14   leave this courthouse, you're going to be subjected to certain

15   limitations on your conduct and your behavior that were not

16   present before you were arrested.

17           First, you will be subject to the four standard

18   conditions that apply to every criminal defendant in a federal

19   pretrial release situation.  Number one, you cannot commit any

20   federal, state or local crime while you're on pretrial release.

21           Number two, if required by law, you may be required to

22   submit a DNA sample.

23           Number three, you cannot change your residence or your

24   contact information without prior notice and approval from the

25   pretrial services officer.

38

1        And, number four, you must appear in court when directed

2   anytime you're told to come back for any future hearing.

3        Additionally, you're going to be subject to the

4   additional conditions that were recommended in your case.  I'm

5   going to impose a $10,000 unsecured bond upon you.  As I

6   mentioned before, an unsecured bond means you're not required to

7   part with any cash at this time, and if you fully comply with

8   all of the terms and conditions of your pretrial release, you

9   will never be required to post any of that money.  But in the

10  event you violate any term or condition or you fail to appear,

11  in addition to any other penalty that you could be facing, you

12  would also be required to forfeit the sum of $10,000 to the

13  United States.  Do you understand?

14        DEFENDANT POLLARD:  Yes, sir.

15        THE COURT:  Additionally, I'm going to impose the other

16  conditions as recommended.  You will be required to report as

17  directed to your supervising officer.  You will be required to

18  attempt to obtain and maintain employment.  You may not obtain

19  any passport or other international travel document.  Your

20  travel is restricted to the Southern District of Georgia.

21        You'll be required to avoid all contact with any

22  potential witness, victim or co-defendant in this investigation.

23        You may not possess any firearm, destructive device or

24  other dangerous weapon.

25        You must refrain from the excessive use of alcohol.  You

1    must refrain from the use or any unlawful possession of any

2    narcotic drug or other controlled substance, unless it is a

3    legitimate medication prescribed by a licensed healthcare

4    provider.

5            You will be required to submit to periodic testing to

6    determine whether you are using any illegal substances.  That

7    could be blood.  It could be urine.  It could be by other means.

8    You are not allowed to attempt to tamper with or obstruct the

9    testing in any way.  If you try to do anything to beat the test,

10   that is a violation as well.

11           You may be required to participate in a program of

12   inpatient or outpatient substance abuse therapy and counseling,

13   if directed by your supervising officer.  And, lastly, you are

14   required to report any encounter that you have with law

15   enforcement in its official capacity to your supervising

16   officer.  It could be something as simple as getting a ticket

17   for running a stop sign.  I don't care.  Any contact, once

18   you're done with it, the next thing you need to do is pick up

19   the phone and alert your supervising officer.  Do you

20   understand?

21           DEFENDANT POLLARD:  Yes, sir.

22           THE COURT:  All right.  Mr. Poirier, any objections to

23   those terms and conditions as I propose to impose them?

24           MR. POIRIER:  No, Your Honor.

25           THE COURT:  Mr. Pennington?

40

1          MR. PENNINGTON:  No, Your Honor.

2          THE COURT:  Officer McDaniel, does that accurately

3    reflect the recommendation of the pretrial services office?

4          USPO McDANIEL:  Yes, Your Honor, it does.

5          THE COURT:  All right.  Thank you.

6          All right.  Mr. Poirier and Ms. Pollard, that concludes

7    your hearing.  Please be seated.

8          MR. POIRIER:  Thank you, Your Honor.

9          THE COURT:  Lastly, on this docket, Mr. Michael Simmons

10   and Mr. Henifin.

11         Mr. Pennington, what is the government's position with

12   regard to release versus detention with regard to Mr. Michael

13   Simmons?

14         MR. PENNINGTON:  Your Honor, with regard to Michael

15   Simmons, the government would agree to the recommendation of

16   probation that the defendant be released on a $10,000 unsecured

17   bond.

18         We do note, similar to the last defendant, that this

19   defendant did not -- or declined to be interviewed by probation.

20   So I'm not sure if the Court wants to, with regard to this

21   particular defendant, require that he have that interview prior

22   to release.

23         THE COURT:  Well, as a practical matter, he's going to

24   have -- he's going to have an interview with pretrial as part of

25   getting his new conditions.  So I think we'll go from there.

41

1          Thank you, Mr. Pennington.

2          Officer McDaniel, does it remain pretrial services's

3     recommendation for release despite the fact the defendant

4     declined to interview?

5          USPO McDANIEL:  Yes, Your Honor, it does.

6          THE COURT:  Thank you, Officer McDaniel.

7          MR. HENIFIN:  Your Honor, could I state that the

8     defendant declined unless he was in the presence of counsel?  So

9     it wasn't that he was being uncooperative.

10         THE COURT:  I understand, Mr. Henifin.  Thank you.

11         All right.  So, Mr. Simmons, insofar as the government

12    is not seeking detention of you in this case and the Court knows

13    of no independent basis that I should keep you in custody, you

14    would appear to be an appropriate candidate for release on bond

15    with conditions.  I'm going to release you on the same

16    conditions you heard me set forth, the four standard conditions

17    that apply to every defendant in a pretrial federal case.

18         Number one, you must not violate any federal, state or

19    local law while you are on pretrial release.

20         Number two, if required by law, you may have to submit a

21    DNA sample.

22         Number three, you cannot change your residence

23    information or your contact information without prior notice and

24    approval from your supervising officer.

25         And, lastly on the standard conditions, you must appear

42

1   in court when told to appear at any future dates.

2          Additionally, I'm going to impose an unsecured bond in

3   the amount of $10,000.  As I've explained previously, an

4   unsecured bond does not require you to post any cash at this

5   time, but if you violate the terms and conditions of your

6   pretrial release, you would be required to forfeit that sum to

7   the United States.  Do you understand?

8          DEFENDANT SIMMONS:  Yes, sir.

9          THE COURT:  Additionally, I'm going to require that you

10  report as directed to your supervising officer.  You must comply

11  with any requirements to obtain or attempt to obtain and

12  maintain employment.

13         You must surrender any passport that you might have to

14  the United States Probation Office, and you may not obtain any

15  new passport or international travel document.  Your travel will

16  be restricted to the Southern District of Georgia.

17         You are required to avoid all contact with any potential

18  witness, victim or co-defendant in this case.  You must refrain

19  from possessing a firearm, destructive device or other dangerous

20  weapon.

21         You must refrain from the excessive use of alcohol.  You

22  must refrain from use or unlawful possession of any narcotic

23  drug or other controlled substance, unless it is a legitimate

24  medication that has been prescribed for you by a licensed

25  healthcare provider.

43

1          You will be required to submit to periodic testing to

2    determine if you are using any illegal substances.  That could

3    be blood.  It could be urine.  It could be other means.  You are

4    not allowed to do anything to try to tamper with or obstruct the

5    testing.  If you try to do anything to beat the test, that is a

6    violation as well.

7          You are to refrain -- I'm so sorry.  You will be

8    required, if directed by your supervising officer, to

9    participate in a program of inpatient or outpatient substance

10   abuse therapy.

11         And, lastly, you will be required to report as soon as

12   possible to your supervising officer any contact that you have

13   with law enforcement in its official capacity.  As I said to the

14   other defendants, I don't care if it's something as simple as a

15   ticket for running through a stop sign, you are required to

16   alert your supervising officer.  Do you understand?

17         DEFENDANT SIMMONS:  Yes, sir.

18         THE COURT:  Mr. Henifin, any objections to the proposed

19   terms and conditions?

20         MR. HENIFIN:  No objections, Your Honor.

21         THE COURT:  Mr. Pennington, any objections from the

22   government to the proposed terms and conditions?

23         MR. PENNINGTON:  No, Your Honor.

24         THE COURT:  All right.  Officer McDaniel, do those terms

25   and conditions accurately reflect the recommendation of your

44

1  office?

2       USPO McDANIEL:  Yes, Your Honor, they do.

3       THE COURT:  All right.  Mr. Henifin and Mr. Simmons,

4  that concludes your hearing.  You all may be seated.

5       MR. HENIFIN:  Thank you, sir.

6       THE COURT:  Mr. Pennington, are there any additional

7  matters from the government this afternoon on this case?

8       MR. PENNINGTON:  No, Your Honor.

9       THE COURT:  From any of the assembled defense counsel,

10  any additional matters this afternoon on this case?

11       MS. BEASLEY:  Your Honor, my client has just informed me

12  that he told his sister to be here today and thought she may be

13  downstairs.  Is there any way I could check on that?  Is it too

14  late to --

15       THE COURT:  Well, the short answer, Ms. Beasley, is I

16  did not open this hearing to the public because of COVID-related

17  issues.  So I'm not bringing other non-third-party type folks in

18  until Thursday.

19       MS. BEASLEY:  Yes, Your Honor.  Thank you.

20       THE COURT:  Any additional matters from any other

21  counsel?

22       ALL:  No, Your Honor.

23       THE COURT:  All right, Ladies and Gentlemen.  Please

24  stay safe and stay healthy.  We stand adjourned.

25            (Proceedings concluded at 2:36 p.m.)

45

1            CERTIFICATE OF OFFICIAL REPORTER

2

3            I, Kelly A. McKee, Registered Diplomate Reporter,

4    Register Merit Reporter and Certified Realtime Reporter, in and

5    for the United States District Court for the Southern District

6    of Georgia, do hereby certify that pursuant to Section 753,

7    Title 28, United States Code, that the foregoing is a true and

8    correct transcript of the electronically recorded proceedings

9    held in the above-entitled matter and that the transcript

10   subsequently transcribed by me is true and accurate to the best

11   of my ability to hear and understand the recording, and the

12   page format is in conformance with the regulations of the

13   Judicial Conference of the United States.

14

15            Dated this 16th day of March, 2021.

16

17

18

19   _____
     /s/ Kelly A. McKee

20   KELLY A. McKEE, CCR, RMR, RDR, CCP

21

22

23

24

25